IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 12-cv-02767-RM-BNB

U.S. SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

GEOFFREY H. LUNN,
DARLENE A. BISHOP, and
VINCENT G. CURRY,

    Defendants.

---

## ORDER
---

This matter is before the Court on "Plaintiff's Renewed Motion for Order Setting Disgorgement, Prejudgment Interest and Civil Penalty against Defendant Geoffrey H. Lunn" (the "Renewed Motion") (ECF No. 61), as supplemented by the "Supplemental Brief Regarding Disgorgement" (the "Supplement") (ECF No. 63). For the reasons set forth below, the Renewed Motion is GRANTED as stated herein.

### I. BACKGROUND

Briefly, according to Plaintiff U.S. Securities and Exchange Commission's (the "Commission") Complaint, between February 2010 and February 2011, Defendant Geoffrey H. Lunn carried out a fictitious investment scheme through a fictitious business called Dresdner Financial. Through false statements, Defendant sought "Affiliates" to invest with Dresdner and market Dresdner's investment program to others. Describing the investment as "100%

guaranteed," Defendant raised more than $5.77 million from at least 70 investors throughout the United States and several foreign countries.  Such funds were deposited into an account in the name of WGC Group, Inc., which was owned and controlled by Defendant.  Such funds were not used for investments as promised; instead, Defendant used the money to make cash withdrawals, pay Affiliates, pay $1 Million to a favored investor, provide money to three Las Vegas "call girls," and pay his personal and business expenses.  Based on Defendant's conduct, the Commission asserted five claims against him and two Affiliates, alleging Defendant acted fraudulently and with scienter.  Those claims are: Violations of Securities Act Sections 5(a) and 5(c); Violations of Exchange Act Section 10(b) and Rule 10b-5; Violations of Securities Act Section 17(a)(1); Violations of Securities Act Sections 17(a)(2) and 17(a)(3); and Violations of Exchange Act Section 15(a).  The Commission sought injunctive relief, disgorgement, prejudgment interest, and civil monetary penalties.

After the filing of the Complaint, a default judgment was entered against Co-Defendant Curry (an Affiliate) to disgorge $399,930 in ill-gotten gains, plus $28,914.11 in prejudgment interest, for a total of $428,844.11.  (ECF No. 27.)  Thereafter, Defendant and the Commission reached a bifurcated settlement agreement.  This agreement provided for the immediate entry of an order of permanent injunctive relief against Defendant, and for briefing to allow the Court to determine the amount of disgorgement, prejudgment interest, and civil penalty to award.  On August 1, 2013, upon joint motion filed by the Commission and Defendant, and in accordance with the parties' agreement, the Court entered a consent judgment (the "Judgment") against Defendant.  (ECF Nos. 33, 39, 40.)

Under the Judgment, Defendant was – and is – permanently enjoined from engaging in various actions and matters. In addition, Defendant agreed he would "pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]," as determined by the Court. (ECF No. 40, page 4 (brackets in original).) Defendant also agreed that he would pay prejudgment interest calculated from the date of violation based on the rate of interest used by the Internal Revenue Service, as set forth in 26 U.S.C. § 6621(a)(2).

In order to determine the amount to be awarded against Defendant, the Judgment contemplated the Commission would file a motion, a hearing may be held on such motion, and discovery may also be had. The Judgment also stated the Court may determine the issues raised in the motion on the basis of affidavits and other documents. In addition, Defendant agreed that the allegations of the Complaint should be accepted and deemed true by the Court, and that he would be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint.

As anticipated under the Judgment, the Commission filed a Motion for Order Setting Disgorgement, Prejudgment Interest and Civil Penalty against Defendant Geoffrey H. Lunn. (ECF No. 41.) However, before that motion was ruled upon, this case was administratively closed pending the conclusion of a parallel criminal matter against Defendant, *U.S. v. Lunn*, 14-cr-00161-REB-01, also pending in the District of Colorado. A judgment and a restitution order have now been entered against Defendant in the parallel criminal case. That order requires Defendant to pay restitution in the amount of $3,922,935, which is to be paid to the victims. The resolution of the criminal case gave rise to the reopening of this civil case and the Renewed

Motion now before the Court. Defendant has filed no response to the Renewed Motion, or its Supplement.[1] The Renewed Motion is now ripe for resolution.

## II. ANALYSIS

### A. FACTS

Based on Defendant's agreement, the Court deems – and, accordingly, finds – the allegations of the Complaint to be true, *i.e.,* that Defendant fraudulently solicited and received more than $5.7 Million from at least 70 investors and misappropriated such funds for uses other than as represented. In addition, based on the affidavits and other materials submitted by the Commission, the Court finds of the $5,770,813 received by Defendant, $1,094,000 was used to pay three investors who had deposited a total of $303,973 into the WGC account.

### B. NO HEARING

As stated, the Judgment references a hearing as part of the process to determine the amount to be paid by Defendant. The Court does not read the parties' agreement or Judgment to require a hearing to be held. Moreover, no party has requested a hearing. Indeed, Defendant neither responded to the Renewed Motion nor updated his contact information. Finally, the Court finds upon review of the record that no hearing is required. For example, there is no indication that there will be any additional arguments or evidence to be presented on the issues at hand should a hearing be held. There is no any indication by any party that the record before the Court is incomplete. Accordingly, under such facts and circumstances, the Court finds a hearing is not required or necessary.

---

[1] As the Court previously noted, orders issued have been returned as undeliverable to Defendant (ECF Nos. 55, 56, 57). The Court directed Defendant to update his address (ECF No. 59), but he has failed to do so. (*See* Docket.)

## C. DISGORGEMENT AND PREJUDGMENT INTEREST

"Generally, disgorgement is a form of restitution measured by the defendant's wrongful gain." *Kokesh v. S.E.C.*, -- U.S. --, 137 S. Ct. 1635, 1640 (2017) (alterations, citation, and quotation marks omitted). "Disgorgement requires that the defendant give up 'those gains ... properly attributable to the defendant's interference with the claimant's legally protected rights.'" *Kokesh,* 137 S. Ct. at 1640 (ellipses in original, citation omitted). In the context of a Commission disgorgement, such orders are imposed by the courts for violating public laws and for punitive purposes. *Kokesh,* 137 S. Ct. at 1643. As such, the primary purpose is to deter violations of the securities laws by depriving wrongdoers of their ill-gotten gains. *See Kokesh,* 137 S. Ct. at 1643 (recognizing that courts have so consistently held); *U.S. v. Badger*, 818 F.3d 563, 566 (10th Cir. 2016) ("Disgorgement aids enforcement by making violations unprofitable, thereby deterring future violations.") Thus, the remedy "'consists of factfinding by a district court to determine the amount of money acquired through wrongdoing—a process sometimes called 'accounting'—and an order compelling the wrongdoer to pay that amount plus interest to the court.'" *Badger*, 818 F.3d at 566 (quoting *SEC v. Cavanagh*, 445 F.3d 105, 116 (2d Cir. 2006)). The district court has broad discretion in calculating the amount to be disgorged. *S.E.C. v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113 (9th Cir. 2006).

Defendant's ill-gotten gains are $5,770,813, all commingled in the WGC account. But, of such gains, various amounts have been paid to others, including $1,094,000 paid to investors A, B, and C. With respect to investor A, he[2] deposited $9,973 into the WGC account and received $50,000 from such account. As to investor B, he deposited $44,000 into the WGC

---

[2] The identities of the investors are unknown and unnecessary to the Court's resolution. The Court uses the pronoun "he" generically.

account and received the same amount from such account. Finally, as to investor C, he deposited $250,000 into the WGC account and received two payments totaling $1,000,000 from this account. Thus, these three investors deposited a total of $303,973 into the account and received a total of $1,094,000, $709,027 more than they invested. At issue here is, based on such transactions, what amount constitutes Defendant's ill-gotten gains for which disgorgement may be had. The Commission contends no deduction should be made for funds used by Defendant for any purpose. The Court examines the types of uses of the funds to determine what, if any, offsets may be appropriate.

The Ninth Circuit has found that "it would be unjust to permit the defendants to offset against the investor dollars they received the expenses of running the very business they created to defraud those investors into giving the defendants the money in the first place." *JT Wallenbrock & Assocs.*, 440 F.3d at 1114. The Court agrees. Thus, funds used to pay Affiliates and business and other related expenses may not be used to offset the amount Defendant received from investors.

As for funds used to benefit Defendant personally, *e.g.*, payments to call girls, it should go without saying that any disgorgement award should not be reduced by such amounts. To hold otherwise would be tantamount to rewarding Defendant for his wrongful actions.

There are also other uses of funds, such as "payments to others," for unknown purposes and/or to unknown persons. It matters not that such purposes (and the association of such persons to Defendant) are unknown, as "[n]either the deterrent purpose of disgorgement nor the goal of depriving a wrongdoer of unjust enrichment would be served" were the Court to allow

for the offset for such unknown uses which were of Defendant's choosing.[3] *JT Wallenbrock & Assocs.*, 440 F.3d at 1115 (discussing business expenses).

This leaves the funds used to pay the three investors. The Commission contends no reduction should be made for the amounts Defendant paid to the investors as such payments were not made in the "ordinary course of business" but were overpayments made to three "select" investors using funds Defendant stole from other investors. Thus, the Commission asserts, the entire amount Defendant received ($5,770,813) should be disgorged. In the alternative, the Commission argues the funds returned to the three investors (equivalent to what they invested) of $303,973 may be an offset. Thus, the amount of disgorgement would be $5,466,840 ($5,770,813 - $303,973).

As the Commission recognizes, there is legal authority which supports a reduction of any disgorgement award for amounts an investor recovers as such recovery "would constitute a partial return of [defendant's] ill-gotten gains." *S.E.C. v. Levin*, 849 F.3d 995, 1007 (11th Cir. 2017). The Court finds such conclusion sound. Although the record does not disclose why Defendant chose to use some funds to repay only these three particular investors, other than Defendant's cryptic remark that somehow investor C "was a deserving person" (Complaint, ¶ 46), such investors nonetheless received a return of their investments. As such, the Court finds the disgorgement award should be reduced by the $303,973 in, essentially, a return of funds. As for the remaining payments to two of such investors (investors A and C) totaling $790,027,[4] the Court agrees no offset should be allowed as such funds were undoubtedly those received from

---

[3] A different conclusion may have been reached had Defendant articulated some legitimate use of such funds and persuaded the Court that an offset is appropriate. Defendant, however, made no such effort.
[4] ($1,094,000 (total paid) – $303,973 (return of funds)) or ($40,027 (investor A) + $750,000 (investor C)).

other investors.[5] Accordingly, on this record, the Court finds the only appropriate deduction would be the funds which equate to a return of investment for investors A, B, and C, *i.e.*, $303,973. Thus, the amount to be disgorged is $5,466,840.

The Commission has also requested prejudgment interest, to which Defendant did not object. The Court finds an award of prejudgment interest is appropriate. *See Digital Ally, Inc. v. Z3 Tech., LLC*, 754 F.3d 802, 819 (10th Cir. 2014) ("[T]he decision whether to award prejudgment interest is generally committed to the district court's discretion"). Based on the Court's determination that the amount to be disgorged is $5,466,840, the Commission has calculated the interest to be $478,648. Defendant filed no objection to such calculation; therefore, the calculation is accepted by the Court. Thus, the amount of disgorgement plus prejudgment interest is $5,945,488,[6] unless there are other offsets.

The record shows there are two other matters which may impact this disgorgement obligation. First, there is a judgment of $428,844.11 ($399,930 disgorgement + $28,914.11 interest) against Defendant Curry. The $399,930 to Curry was paid from investor funds and is also included in the $5,466,840. The Commission requests the Court to "treat" the $428,844.11 judgment against Curry as a joint and several liability between Curry and Defendant. The problem, however, is that the judgment against Curry does not provide it is a joint and several liability and the Commission cites to no authority and provides no analysis in support of such request. The Court will not "treat" a judgment as something it is not. Nonetheless,

---

[5] Even though the funds were commingled in the WGC account, these three investors' funds were contained within such funds. However, once their investments were essentially returned, the remaining funds were those of *other* investors. In light of the purpose of disgorgement orders, the Court will not allow Defendant to receive an offset for amounts paid to some investors through the use of other investors' funds, and thereby diminish the amount which is subject to disgorgement for the benefit of the other investors who have not been reimbursed.

[6] The Court notes that the calculations at ECF 63-2 show two final numbers: $5,945,488 and $6,249,461. By the Court's calculations, the correct amount is $5,945,488.

8

disgorgement is an equitable remedy. Defendant reaped the benefit of his ill-gotten gains. Further, it is unknown to the Court whether Curry will be able to pay the amount ordered; the judgment against him was obtained by default. Accordingly, the Court will not reduce the amount of disgorgement against Defendant by what Curry has been ordered to pay. Defendant may, however, obtain a credit for any amount which Curry does pay.

Next, Defendant has been ordered to pay restitution in his related criminal case. The Commission acknowledges that any amounts paid in restitution in connection with that criminal case may be deemed to satisfy a portion of the disgorgement ordered in this case. The Court agrees. *See S.E.C. v. Palmisano*, 135 F.3d 860, 863–64 (2d Cir. 1998) (acknowledging that to the extent defendant pays or has paid restitution as ordered in the criminal judgment, such payments will offset his disgorgement obligation in the civil judgment).

**D. CIVIL PENALTIES**

The Commission also seeks civil penalties. Based on Defendant's admitted allegations of violations of the securities anti-fraud statutes, causing substantial loss to the investors, the Court finds that civil penalties are also appropriate.

There are three tiers of penalties. A first tier penalty may apply for any violation. *See* 15 U.S.C. §§ 77t(d)(2)(A) & 78u(d)(3)(B)(i). A second tier penalty may apply if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *See* 15 U.S.C. §§ 77t(d)(2)(B) & 78u(d)(3)(B)(ii). A third tier penalty may apply where (1) the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and (2) the violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *See* 15 U.S.C. §§

77t(d)(2)(C) & 78u(d)(3)(B)(iii). The maximum amount of a third-tier civil penalty for a natural person, per violation, during the relevant time period is the greater of $150,000 or the gross amount of pecuniary gain to such defendant. *See* 17 C.F.R. §201.1001. The amount of any penalty, however, is to be determined by the court "in light of the facts and circumstances" of the case. 15 U.S.C. §§ 77t(d)(2)(A) & 78u(d)(3)(B)(i).

In this case, initially, the Commission sought a third-tier civil penalty in the sum of the $5,770,813, the amount Defendant raised through his fraudulent investment scheme. Subsequently, in the Supplement, the Commission requested a civil penalty in an amount equal to the disgorgement. The Commission argues such penalty is appropriate as Defendant's conduct was deliberate, fraudulent, and egregious; his actions caused significant losses to others; and he showed no signs of remorse. Defendant has not refuted the Commission's assertions. On this record, the Court finds a third-tier civil penalty in an amount equal to the disgorgement is appropriate. Thus, Defendant shall pay a civil penalty in the amount of $5,466,840.

### E. PAYMENT TO WHOM

The Commission did not address to whom the amounts disgorged (plus interest) and the civil penalty should be paid. In *Kokesh*, the Supreme Court noted "[a]s courts and the Government have employed the remedy, disgorged profits are paid to the district court, and it is within the court's discretion to determine how and to whom the money will be distributed." 137 S. Ct. at 1644 (citation and quotation marks omitted). "Some disgorged funds are paid to victims; other funds are dispersed to the United States treasury." 137 S. Ct. at 1644. As for any civil penalties, as relevant here, they "shall be payable into the Treasury of the United States, except as otherwise provided in section 7246 of this title…." 15 U.S.C. §§ 77t(d)(3)(A) &

78u(d)(3)(C)(i). Under 15 U.S.C. § 7246(a), if the Commission obtains a civil penalty in an action under the securities laws, "the amount of such civil penalty shall, on the motion or at the direction of the Commission, be added to and become part of a disgorgement fund or other fund established for the benefit of the victims of such violation."

In this case, the Court is inclined to have the disgorged funds (and associated prejudgment interest) distributed to the victims.[7] Their identity, however, is unknown to this Court. It is also unknown to the Court whether a disgorgement or other fund has been established for Defendant's victims and whether the Commission intends to add to such fund any amounts received under this Order. Thus, the Court directs the Commission to provide a report to address these issues as set forth below. After the receipt of the report, the Court may enter any orders as necessary to address to whom or where any funds to be received from Defendant shall be paid.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That Plaintiff's Renewed Motion for Order Setting Disgorgement, Prejudgment Interest and Civil Penalty against Defendant Geoffrey H. Lunn (ECF No. 61) is **GRANTED** as stated herein;

(2) That Defendant Geoffrey H. Lunn is liable for disgorgement of $5,466,840, together with prejudgment interest in the amount of $478,648, for a total of $5,945,488 in disgorgement obligations;

---

[7] This would be consistent with the order of restitution in the criminal case and the offset there for amounts recovered in this case.

(3) That Defendant Geoffrey H. Lunn is liable for civil penalties in the amount of $5,466,840;

(4) That any payments made by Defendant Geoffrey H. Lunn as restitution in his parallel criminal case shall be an offset to his disgorgement obligations under this Order;

(5) That any payments made by Defendant Vincent G. Curry as ordered by this court (ECF No. 27) shall be an offset to Defendant Geoffrey H. Lunn's disgorgement obligations under this Order;

(6) That, on or before January 29, 2018, Plaintiff shall file a report advising (a) whether a disgorgement or other fund will be or has been set up to pay the victims for any amounts which may be received from Defendant Geoffrey H. Lunn; (b) whether any civil penalties which may be received from Defendant Geoffrey H. Lunn shall be paid into such fund; and (c) of its position as to where and how the disgorgement obligations shall be paid; and

(7) That the Clerk shall mail a copy of this Order to Defendant Lunn, Register No. 40376-013, at: BIG SPRING CORRECTIONAL INSTITUTION, 2001 Rickabaugh Dr., Big Spring, TX 79720.

DATED this 8th day of January, 2018.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge